IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
ANDERSON/GREENWOOD DIVISION

| | | |
|---|---|---|
| Darian Antonio Coleman, | ) | Case No. 8:16-cv-00709-DCN-JDA |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **REPORT AND RECOMMENDATION** |
| | ) | **OF MAGISTRATE JUDGE** |
| Warden John Pate, Officer Charlie Frazier, | ) | |
| Sgt. Leon Mack, Lt. Ellen Inabinet, Major | ) | |
| Worrock, Nurse Mrs. Spalding, Director | ) | |
| Bryan P. Sterling, | ) | |
| | ) | |
| Defendants.[1] | ) | |
| | ) | |

This matter is before the Court on a motion to dismiss filed by Defendants Warden

John Pate ("Pate") and Director Bryan P. Stirling ("Stirling")[2] [Doc. 10]; a motion to dismiss

filed by Defendant Sgt. Leon Mack ("Mack") [Doc. 82]; a motion for summary judgment filed

by Defendants Officer Charlie Frazier ("Frazier"), Lt. Ellen Inabinet ("Inabinet"), and Major

Worrock ("Worrock") [Doc. 85]; and a motion for summary judgment filed by Defendant

Nurse Mrs. Spalding ("Spalding")[3] [Doc. 123].  Pursuant to the provisions of 28 U.S.C.

§ 636(b)(1)(B) and Local Civil Rule 73.02(B)(2)(d), D.S.C., this magistrate judge is

authorized to review all pretrial matters in cases filed under 42 U.S.C. § 1983 and to submit

findings and recommendations to the District Court.

Plaintiff, proceeding pro se, filed this action in the Court of Common Pleas for

Richland County, South Carolina, alleging violations of his constitutional rights pursuant to

---

[1]Defendant Ofc. James Davis was dismissed from this case on August 31, 2016.
[Doc. 99.]

[2]Stirling was incorrectly identified in the Complaint as Sterling.  [Doc. 10 at 1.]

[3]Spalding's surname is now Young.  [Doc. 123-1.]

42 U.S.C. § 1983 and violations of the South Carolina Tort Claims Act. [Doc. 1-1.] On March 4, 2016, Defendants removed the action to this Court. [Doc. 1.] On March 9, 2016, Pate and Stirling filed a motion to dismiss. [Doc. 10.] Plaintiff filed a response in opposition[4] [Doc. 35], and Pate and Stirling filed a reply [Doc. 32]. Mack filed a motion to dismiss on July 21, 2016 [Doc. 82], and Frazier, Inabinet, and Worrock filed a motion for summary judgment on July 22, 2016 [Doc. 85]. Plaintiff filed a response in opposition to these motions on October 18, 2016.[5] [Doc. 118.] Spalding filed a motion for summary judgment on November 9, 2016. [Doc. 123.] Plaintiff filed a response in opposition to Spalding's motion on December 2, 2016.[6] [Doc. 127.] All motions are ripe for review.

---

[4]On April 5, 2016, the Clerk filed as a response in opposition what Plaintiff styled as "Objection To Motion of removal." [Doc. 29.] However, Plaintiff subsequently clarified that this filing was in response to the notice of removal and that he submitted a different response to the motion to dismiss. [Doc. 42.] Out of an abundance of caution, the Court considers Docket Entry Number 35 as Plaintiff's response in opposition to Pate and Stirling's motion to dismiss. [*See* Doc. 35 (styles as "Objection to Defendants' April 15, 2016 Motion," but apparently responding to the motion to dismiss and *Roseboro* Order).]

[5]Plaintiff styled this filing merely as "Affidavit," and much of the document refers to events in 2016. [Doc. 118.]

[6]On December 2, 2016, the Clerk filed as a motion for reconsideration what Plaintiff styled as "Rule 59(e)." [Doc. 127.] After briefing on the motion, the Court denied Plaintiff's motion for reconsideration, noting that the Court had not yet ruled on the pending motions for summary judgment. [Doc. 135.] Subsequently, Plaintiff clarified that this filing was actually a response in opposition to a motion for summary judgment. [Doc. 138.] Although Plaintiff does not indicate to which motion for summary judgment Docket Entry Number 127 responded, out of an abundance of caution, the Court will consider Plaintiff's arguments as responsive to all pending motions. [*See* Doc. 127.]

2

## BACKGROUND[7]

Plaintiff alleges that on June 10, 2014, he was subjected to excessive force by use of chemical munitions. [Doc. 1-1 at 14.] More specifically, Plaintiff asserts that he was kicking his cell door to get the attention of security staff so that Plaintiff could use the law computer program. [*Id.*] Frazier asked Plaintiff what his problem was, and Plaintiff informed Frazier that he had requested to use the computer, but Frazier informed Plaintiff he would not be able to use the computer. [*Id.*] Plaintiff kicked his cell door again because it was clear he would not be allowed to use the computer program for research. [*Id.*] Frazier then came to Plaintiff's door, opened the feeding flap, administered chemical munitions, locked the flap, and walked away. [*Id.*] Plaintiff contends that Frazier subsequently falsified an incident report, that Inabinet helped conceal the falsified report by signing the report, and that Worrock helped conceal the falsified report by failing to blow the whistle on Frazier.[8] [*Id.* at 14–15.]

Plaintiff contends Inabinet and Mack failed to meet correctional standards by failing to ensure cell checks were conducted every 30 minutes. [*Id.* at 15.] Further, Plaintiff asserts Inabinet and Mack reported to Plaintiff's cell 20 to 30 minutes after the incident and removed Plaintiff's cell mate from the cell but refused to remove Plaintiff from his cell. [*Id.*]

---

[7]The facts included in this Background section are taken directly from Plaintiff's Complaint.

[8]It is not entirely clear how Plaintiff contends the incident report was falsified, as the factual allegations Plaintiff asserts are in the report are largely the same as the factual allegations Plaintiff asserts in his Complaint. However, liberally construing the Complaint, Plaintiff may contend that Frazier reported he was conducting security checks when he heard Plaintiff kicking his cell door, but actually Frazier was not conducting a security check. [*See* Doc. 1-1 at 14.]

Plaintiff alleges Mack and Spalding came to Plaintiff's cell to administer his daily medication, and Plaintiff informed Mack and Spalding that he was having chest pains but Spalding did nothing. [*Id.* at 16.]  Further, Mack told Spalding that Plaintiff refused medical assistance.  [*Id.*]

Based on these factual allegations, Plaintiff alleges violations of the South Carolina Tort Claims Act and violations of his Eighth Amendment rights.  Plaintiff seeks damages. [*Id.* at 17.]

## APPLICABLE LAW

**Liberal Construction of Pro Se Complaint**

Plaintiff brought this action pro se, which requires the Court to liberally construe his pleadings.  *Estelle v. Gamble*, 429 U.S. 97, 106 (1976); *Haines v. Kerner*, 404 U.S. 519, 520 (1972); *Loe v. Armistead*, 582 F.2d 1291, 1295 (4th Cir. 1978); *Gordon v. Leeke*, 574 F.2d 1147, 1151 (4th Cir. 1978).  Pro se pleadings are held to a less stringent standard than those drafted by attorneys.  *Haines*, 404 U.S. at 520.  The mandated liberal construction means only that if the Court can reasonably read the pleadings to state a valid claim on which the plaintiff could prevail, it should do so.  *Barnett v. Hargett*, 174 F.3d 1128, 1133 (10th Cir. 1999).  A court may not construct the plaintiff's legal arguments for her.  *Small v. Endicott*, 998 F.2d 411, 417–18 (7th Cir. 1993).  Nor should a court "conjure up questions never squarely presented."  *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985).

**Requirements for a Cause of Action Under § 1983**

This action is filed pursuant to 42 U.S.C. § 1983, which provides a private cause of action for constitutional violations by persons acting under color of state law.  Section 1983 "'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.'" *Albright v. Oliver*, 510 U.S. 266, 271 (1994) (quoting *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979)).  Accordingly, a civil action under § 1983 allows "a party who has been deprived of a federal right under the color of state law to seek relief." *City of Monterey v. Del Monte Dunes at Monterey, Ltd.*, 526 U.S. 687, 707 (1999).

 Section 1983 provides, in relevant part,

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States or any person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . .

42 U.S.C. § 1983.  To establish a claim under § 1983, a plaintiff must prove two elements: (1) that the defendant "deprived [the plaintiff] of a right secured by the Constitution and laws of the United States" and (2) that the defendant "deprived [the plaintiff] of this constitutional right under color of [State] statute, ordinance, regulation, custom, or usage." *Mentavlos v. Anderson*, 249 F.3d 301, 310 (4th Cir. 2001) (third alteration in original) (citation and internal quotation marks omitted).

The under-color-of-state-law element, which is equivalent to the "state action" requirement under the Fourteenth Amendment,

> reflects judicial recognition of the fact that most rights secured by the Constitution are protected only against infringement by governments.  This fundamental limitation on the scope of

> constitutional guarantees preserves an area of individual freedom by limiting the reach of federal law and avoids imposing on the State, its agencies or officials, responsibility for conduct for which they cannot fairly be blamed.

*Id.* (quoting *Dowe v. Total Action Against Poverty in Roanoke Valley,* 145 F.3d 653, 658 (4th Cir. 1998)) (internal citations and quotation marks omitted).  Nevertheless, "the deed of an ostensibly private organization or individual" may at times be treated "as if a State has caused it to be performed."  *Brentwood Acad. v. Tenn. Secondary Sch. Athletic Ass'n*, 531 U.S. 288, 295 (2001).  Specifically, "state action may be found if, though only if, there is such a 'close nexus between the State and the challenged action' that seemingly private behavior 'may be fairly treated as that of the State itself.'"  *Id.* (quoting *Jackson v. Metro. Edison Co.*, 419 U.S. 345, 351 (1974)).  State action requires both an alleged constitutional deprivation "caused by the exercise of some right or privilege created by the State or by a rule of conduct imposed by the State . . . or by a person for whom the State is responsible" and that "the party charged with the deprivation [is] a person who may fairly be said to be a state actor."  *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 937 (1982).  A determination of whether a private party's allegedly unconstitutional conduct is fairly attributable to the State requires the court to "begin[ ] by identifying 'the specific conduct of which the plaintiff complains.'"  *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 51 (1999) (quoting *Blum* v. *Yaretsky*, 457 U.S. 991, 1004 (1982)).

**Motion to Dismiss Standard**

Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a claim should be dismissed if it fails to state a claim upon which relief can be granted.  When considering a motion to dismiss, the court should "accept as true all well-pleaded allegations and should

view the complaint in a light most favorable to the plaintiff." *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993). However, the court "need not accept the legal conclusions drawn from the facts" nor "accept as true unwarranted inferences, unreasonable conclusions, or arguments." *Eastern Shore Mkts., Inc. v. J.D. Assocs. Ltd. P'ship*, 213 F.3d 175, 180 (4th Cir. 2000). Further, for purposes of a Rule 12(b)(6) motion, a court may rely on only the complaint's allegations and those documents attached as exhibits or incorporated by reference. *See Simons v. Montgomery Cty. Police Officers*, 762 F.2d 30, 31 (4th Cir. 1985). If matters outside the pleadings are presented to and not excluded by the court, the motion is treated as one for summary judgment under Rule 56 of the Federal Rules of Civil Procedure. Fed. R. Civ. P. 12(d).

With respect to well-pleaded allegations, the United States Supreme Court explained the interplay between Rule 8(a) and Rule 12(b)(6) in *Bell Atlantic Corp. v. Twombly*:

> Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief," in order to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the "grounds" of his "entitle[ment] to relief" requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact).

550 U.S. 544, 555 (2007) (footnote and citations omitted); *see also* 5 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1216, at 235–36 (3d ed. 2004) ("[T]he pleading must contain something more . . . than a bare averment that the pleader wants

compensation and is entitled to it or a statement of facts that merely creates a suspicion that the pleader might have a legally cognizable right of action.").

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (citing *Twombly*, 550 U.S. at 556). The plausibility standard reflects the threshold requirement of Rule 8(a)(2)—the pleader must plead sufficient facts to show he is entitled to relief, not merely facts consistent with the defendant's liability. *Twombly*, 550 U.S. at 557 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Iqbal*, 556 U.S. at 678 ("Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of "entitlement to relief."'" (quoting *Twombly*, 550 U.S. at 557)). Accordingly, the plausibility standard requires a plaintiff to articulate facts that, when accepted as true, demonstrate that the plaintiff has stated a claim that makes it plausible the plaintiff is entitled to relief. *Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009) (quoting *Iqbal*, 556 U.S. at 678).

**Summary Judgment Standard**

Rule 56 of the Federal Rules of Civil Procedure states, as to a party who has moved for summary judgment:

> The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.

Fed. R. Civ. P. 56(a).  A fact is "material" if proof of its existence or non-existence would affect disposition of the case under applicable law.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  An issue of material fact is "genuine" if the evidence offered is such that a reasonable jury might return a verdict for the non-movant.  *Id.* at 257.  When determining whether a genuine issue has been raised, the court must construe all inferences and ambiguities against the movant and in favor of the non-moving party.  *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962).

The party seeking summary judgment shoulders the initial burden of demonstrating to the court that there is no genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  Once the movant has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment, may not rest on the allegations averred in his pleadings.  *Id.* at 324.  Rather, the non-moving party must demonstrate specific, material facts exist that give rise to a genuine issue.  *Id.*  Under this standard, the existence of a mere scintilla of evidence in support of the non-movant's position is insufficient to withstand the summary judgment motion.  *Anderson*, 477 U.S. at 252.  Likewise, conclusory allegations or denials, without more, are insufficient to preclude granting the summary judgment motion.  *Ross v. Commc'ns Satellite Corp.*, 759 F.2d 355, 365 (4th Cir. 1985), *overruled on other grounds*, 490 U.S. 228 (1989).  "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted."  *Anderson*, 477 U.S. at 248.  Further, Rule 56 provides in pertinent part:

> A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
>
> > (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
> >
> > (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1).  Accordingly, when Rule 56(c) has shifted the burden of proof to the non-movant, he must produce existence of a factual dispute on every element essential to his action that he bears the burden of adducing at a trial on the merits.

## DISCUSSION

**Federal Claims**

### *Defendants Pate and Stirling*

As an initial matter, the Court notes that Pate and Stirling are not mentioned in the text of the Complaint other than to list them as parties and in the caption of the Complaint. There is no indication these Defendants were present or had anything to do with the incidents set forth in the Complaint.  Because there is no doctrine of respondeat superior in § 1983 claims, *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 691–94 (1978), a defendant is liable in his individual capacity only for his personal wrongdoing or supervisory actions that violated constitutional norms, *see Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir. 1994) (setting forth elements necessary to establish supervisory liability under

10

§ 1983).  A plaintiff must establish three elements to prevail under § 1983 on a theory of supervisory liability:

> (1) that the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed "a pervasive and unreasonable risk" of constitutional injury to citizens like the plaintiff; (2) that the supervisor's response to that knowledge was so inadequate as to show "deliberate indifference to or tacit authorization of the alleged offensive practices[]"; and (3) that there was an "affirmative causal link" between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff.[9]

*Id.* (citations omitted).  Plaintiff has failed to allege any facts to demonstrate any personal or supervisory wrongdoing by Pate and Stirling, and therefore, the federal claims against these Defendants should be dismissed.

---

[9]Stated differently,

> "[A]bsent an allegation that a named defendant has personally subjected the plaintiff to a deprivation of his constitutional rights or has caused the conduct complained of or participated in some manner in the allegedly unlawful actions of his employee or subordinate officer, this Court has held a complaint insufficient to state a claim against such defendant under § 1983."

*Thompson v. McCoy*, 425 F. Supp. 407, 411 (D.S.C. 1976) (quoting *Knipp v. Weikle*, 405 F. Supp. 782 (N.D. Ohio 1975)).  A plaintiff's burden to establish a claim based on supervisory liability is a heavy one; in fact, the Supreme Court may have entirely abrogated supervisory liability in *Bivens* actions.  *See Ashcroft v. Iqbal*, 556 U.S. 662, 693 (2009) (Souter, J., dissenting) ("Lest there be any mistake, . . . the majority is not narrowing the scope of supervisory liability; it is eliminating *Bivens* supervisory liability entirely.  The nature of a supervisory liability theory is that the supervisor may be liable, under certain conditions, for the wrongdoing of his subordinates, and it is this very principle that the majority rejects.").  A *Bivens* action "is the 'federal analog to suits brought against state officials under . . . § 1983.'"  *Id.* at 675–76 (quoting *Hartman v. Moore*, 547 U.S. 250, 254 (2006)).  Therefore, the Supreme Court's reasoning may extend to abrogate supervisory liability in § 1983 actions as well as *Bivens* actions.  *See Jones v. Corr. Care Solutions*, No. 0:09-cv-269, 2010 WL 2639788, at *2 (D.S.C. June 7, 2010) (noting that, under *Iqbal*, supervisory liability may no longer be a viable § 1983 claim).

### *Excessive Force Claim*

The use of excessive force upon an inmate by correctional officers violates the Eighth Amendment's prohibition against cruel and unusual punishment. *Hudson v. McMillian*, 503 U.S. 1, 5 (1992). To state an excessive force claim, an inmate must show (1) that the correctional officers acted with a sufficiently culpable state of mind and (2) that the harm inflicted on the inmate was sufficiently serious. *Williams v. Benjamin*, 77 F.3d 756, 761 (4th Cir. 1996). The subjective component requires the inmate to demonstrate the officer applied force not "in a good faith effort to maintain or restore discipline," but rather applied force "maliciously and sadistically for the very purpose of causing harm." *Hudson*, 503 U.S. at 6–7. "It is obduracy and wantonness, not inadvertence or error in good faith, that characterize the conduct prohibited by the Cruel and Unusual Punishments Clause."[10] *Wilson v. Seiter*, 501 U.S. 294, 299 (1991). The objective component of an excessive force claim is not nearly as demanding to establish because "[w]hen prison officials maliciously and sadistically use force to cause harm, contemporary standards of decency always are violated . . . whether or not significant injury is evident." *Id.* at 9 (internal citation omitted). However,

> not every malevolent touch by a prison guard gives rise to a federal cause of action. The Eighth Amendment's prohibition of cruel and unusual punishments necessarily excludes from constitutional recognition *de minimis* uses of physical force, provided that the use of force is not of a sort repugnant to the

---

[10]In evaluating whether the use of force was wanton or unnecessary, the Court considers (1) the need for the application of force, (2) the relationship between the need and the amount of force used, (3) the threat reasonably perceived by the officials, and (4) any efforts made to temper the severity of a forceful response. *Hudson*, 503 U.S. at 7. Additionally, the extent of injury suffered by an inmate should be considered; "[t]he absence of serious injury is . . . relevant to the Eighth Amendment inquiry, but does not end it." *Id.*

12

> conscience of mankind.  An inmate who complains of a push or shove that causes no discernible injury almost certainly fails to state a valid excessive force claim.

*Wilkins v. Gaddy*, 559 U.S. 34, 37–38 (2010) (internal citations and quotation marks omitted).

The Court of Appeals for the Fourth Circuit has addressed the use of chemical munitions in a prison setting.  *See Williams*, 77 F.3d 756; *Bailey v. Turner*, 736 F.2d 963, 969 (4th Cir. 1984).  So long as the quantity of mace used is commensurate with the gravity of the occasion, its use does not violate the Constitution.  *Bailey*, 736 F.2d at 969.  Specifically, the *Bailey* Court held that prison officials may use mace to compel the obedience of a recalcitrant prisoner.  *Id.* at 969–70.  The *Bailey* Court found that the Eighth Amendment afforded prison officials the discretion to use mace on inmates to compel them to abide by prison rules, even if they did not pose an immediate physical threat.  *Id.* Whether the use of chemical munitions on an inmate constitutes excessive force depends upon "the totality of the circumstances, the provocation, the amount of gas used, and the purposes for which the gas was used."  *Id.* at 969.  Further, the Fourth Circuit has noted that "[a] limited application of mace may be much more humane and effective than a flesh to flesh confrontation with an inmate" and "because a limited use of mace constitutes a relatively 'mild' response compared to other forms of force, the initial application of mace indicates a 'tempered' response by the prison officials." *Williams*, 77 F.3d at 763 (citations omitted).

Here, Plaintiff alleges that Frazier used excessive force when he sprayed chemical munitions into Plaintiff's cell.[11]  [Doc. 1-1 at 14.]  However, the Court concludes that no reasonable jury could find that the amount of force used was unconstitutionally excessive. Frazier's affidavit and the incident report[12] indicate that Plaintiff was kicking his cell door and that Plaintiff refused at least three directives to stop kicking the cell door.  [Doc. 85-2 at 3 ¶¶ 6–10; 6.]  Indeed, Plaintiff acknowledges in his Complaint that he was kicking his cell door and that he refused at least one directive to stop kicking his cell door.  [Doc. 1-1 at 14.]  Frazier avers that Plaintiff's refusal to comply with Frazier's directive is a violation of SCDC policy and that Plaintiff's disruptive behavior was a direct threat to the security of inmates and staff inside the special management unit ("SMU") where Plaintiff was housed. [*Id.* at 3 ¶¶ 11–12.]  Frazier further avers that upon Plaintiff's refusal of Frazier's directives, Frazier opened the food flap on Plaintiff's cell door and administered two short bursts of chemical munitions.  [*Id.* at 3 ¶ 13.]  Frazier testifies that he administered chemical munitions in an effort to restore order.  [*Id.* at 4 ¶ 21.]

---

[11]The Complaint also includes allegations that Inabinet and Mack failed to meet correctional standards by failing to ensure cell checks were conducted every 30 minutes. [Doc. 1-1 at 15.]  To the extent Plaintiff seeks to assert a § 1983 claim based on these allegations, such claim fails because the failure of a prison official to follow prison procedures does not, standing alone, amount to a constitutional violation.  *See Keeler v. Pea*, 782 F.Supp. 42, 44 (D.S.C. 1992) (violations of prison policies which fail to reach the level of a constitutional violation are not actionable under § 1983).

[12]Plaintiff contends that Frazier falsified the incident report, that Inabinet helped conceal the falsified report by signing the report, and that Worrock helped conceal the falsified report by failing to blow the whistle on Frazier.  [Doc. 1-1 at 14–15.]  As previously stated, it is not entirely clear how Plaintiff contends the incident report was falsified.  In any event, Plaintiff's conclusory allegations, without more, are insufficient to create a triable issue of fact.  *See Ross*, 759 F.2d at 365.

The undisputed evidence in the record establishes that Plaintiff's kicking the door and refusing to obey Frazier's orders to stop kicking the door necessitated the use of chemical munitions. *Bailey*, 736 F.2d at 969–70.  Plaintiff argues he posed no threat to Frazier because he was locked behind a cell door.  [Doc. 127 at 3.]  However, Defendants' evidence demonstrates that Plaintiff's behavior presented a threat to inmates and staff in SMU.  [Docs. 85-2 at 3 ¶ 12; 85-1 at 3 ¶¶ 12–13, 15]; *see also Whitley v. Albers*, 475 U.S. 312, 321 (1986); *Brown v. Eagleton*, No. 4:14-cv-357-BHH, 2015 WL 5781504, at *2 (D.S.C. Sept. 30, 2015) (rejecting the argument "that prison officials may not use mace or chemical munitions on disruptive prisoners who are locked in a cell and may only use write ups and the loss of privileges to secure compliance and maintain discipline").  Moreover, Defendants have provided evidence of Plaintiff's disciplinary history, demonstrating his propensity toward violent and disruptive behavior, including convictions for disrespect and refusing or failing to follow the orders of prison staff.  [Doc. 85-1 at 3 ¶ 7–9; 6–7.]  This disciplinary history supports the reasonableness of Frazier's perception that Plaintiff's behavior posed a threat.  Although the use of 65 grams [*see* Doc. 85-2 at 6] is not insignificant, as stated, it is undisputed that Plaintiff refused to comply with the directive to stop kicking the door.  *See Kemp v. Drago*, 1:12-1481-JFA-SVH, 2013 WL4874972, at *7 (D.S.C. Sept. 11, 2013) (finding the use of 72 grams of chemical munitions, while significant, was not excessive where a prisoner failed to comply with directives).  Finally, although Plaintiff appears to allege he was not seen by medical staff until one week later [Doc. 127 at 2], the evidence establishes that after Frazier administered chemical munitions, he notified medical staff and his superior officers of the incident, and Plaintiff was evaluated by medical staff [Doc. 85-2 at 3–4 ¶¶ 15–16; 6].  Moreover, the medical

15

records and Spalding's affidavit indicate that Plaintiff was evaluated on June 10, 2014, following the use of chemical munitions, and the notes indicate that Plaintiff's respirations were even and non-labored, he was able to speak without difficulty, and he was in no acute distress. [Doc. 123-1 at 2 ¶ 7; 3.] Additionally, Plaintiff was provided running water. [*Id.*] Applying the factors outlined in *Hudson* and *Bailey* to this case, the Court concludes that no reasonable jury could find that the use of chemical munitions was not a good faith effort to restore and maintain prison discipline when faced with a recalcitrant prisoner. *See Wilkins*, 559 U.S. at 37; *Whitley*, 475 U.S. at 320–21; *Williams*, 77 F.3d at 763; *Bailey*, 736 F.2d at 969–70. Thus, summary judgment is appropriate with respect to Plaintiff's excessive force claim.

### Deliberate Indifference Claim

Deliberate indifference to a prisoner's serious[13] medical needs violates the Eighth Amendment and states a cause of action under § 1983 because deliberate indifference constitutes "the 'unnecessary and wanton infliction of pain.'" *Estelle*, 429 U.S. at 104–05 (quoting *Gregg v. Georgia*, 428 U.S. 153, 173 (1976) (joint opinion of Stewart, Powell, and Stevens, JJ.)). Deliberate indifference exists when prison officials know of a substantial risk to a prisoner's health or safety and consciously disregard that risk. *See Farmer v. Brennan*, 511 U.S. 825, 836 (1994); *Miltier v. Beorn*, 896 F.2d 848, 851–52 (4th Cir. 1990) ("Deliberate indifference may be demonstrated by either actual intent or reckless disregard.

---

[13]"A medical need is 'serious' if it is one that has been diagnosed by a physician as mandating treatment, or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Gaudreault v. Municipality of Salem, Mass.*, 923 F.2d 203, 208 (1st Cir. 1990) (citing *Monmouth Cty. Corr. Institutional Inmates v. Lanzaro*, 834 F.2d 326, 347 (3rd Cir. 1987); *Hendrix v. Faulkner*, 525 F. Supp. 435, 454 (N.D. Ind.1981)).

A defendant acts recklessly by disregarding a substantial risk of danger that is either known to the defendant or which would be apparent to a reasonable person in the defendant's position." (citation omitted)).  Within the United States Court of Appeals for the Fourth Circuit, "the treatment must be so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness" to violate a prisoner's Eighth Amendment rights.  *Miltier*, 896 F.2d at 851.

To prevail on an Eighth Amendment claim, the prisoner must demonstrate (1) his medical condition was a sufficiently serious one and (2) subjectively, the prison officials acted with a sufficiently culpable state of mind, which is satisfied by showing deliberate indifference by the prison officials.  *Goodman v. Wexford Health Sources, Inc.*, No. 09-6996, 2011 WL 1594915, at *1 (4th Cir. Apr. 28, 2011) (quoting *Johnson v. Quinones*, 145 F.3d 164, 167 (4th Cir. 1998)).  As the United States Supreme Court has explained,

> Since, we said, only the "'unnecessary *and wanton* infliction of pain'" implicates the Eighth Amendment, a prisoner advancing such a claim must, at a minimum, allege "deliberate indifference" to his "serious" medical needs.  "It is *only* such indifference" that can violate the Eighth Amendment; allegations of "inadvertent failure to provide adequate medical care," or of a "negligent . . . diagnos[is]," simply fail to establish the requisite culpable state of mind.

*Wilson v. Seiter*, 501 U.S. 294, 297 (1991) (emphasis and alteration in original) (citations omitted).  Further, in the context of prisoner medical care, the Constitution requires only that prisoners receive adequate medical care; a prisoner is not guaranteed his choice of treatment.  *Jackson v. Fair*, 846 F.2d 811, 817 (1st Cir. 1988) (citing *Layne v. Vinzant*, 657 F.2d 468, 471 (1st Cir. 1981)); *see Russell v. Sheffer*, 528 F.2d 318, 318 (4th Cir. 1975) (citing *Blanks v. Cunningham*, 409 F.2d 220 (4th Cir.1969); *Hirons v. Director*, 351 F.2d 613

(4th Cir.1965)) ("Prisoners are entitled to reasonable medical care."); *see also, e.g.*, *Barton v. Dorriety*, No. 9:10-cv-1362, 2011 WL 1049510, at *2 (D.S.C. Mar. 21, 2011) (citing *Jackson*, 846 F.2d at 817). The fact that a prisoner believed he had a more serious injury or that he required better treatment does not establish a constitutional violation. *See, e.g.*, *Russell*, 528 F.2d at 319.

Here, Plaintiff alleges that Spalding was deliberately indifferent to Plaintiff's medical needs because she did not treat Plaintiff. [Doc. 1-1 at 16.] However, the Court concludes that Plaintiff has failed to demonstrate Defendants were deliberately indifferent to his medical needs. As stated, the medical records and Spalding's affidavit indicate that Plaintiff was evaluated on June 10, 2014, following the use of chemical munitions, and the notes indicate that Plaintiff's respirations were even and non-labored, he was able to speak without difficulty, and he was in no acute distress. [Doc. 123-1 at 2 ¶ 7; 3.] Additionally, Plaintiff was provided running water, which is the normal course of treatment following the administration of chemical munitions. [*Id.*; Doc. 85-3 at 3 ¶ 9.] Plaintiff subsequently had the following interactions with medical personnel:

- On June 11, 2014, Plaintiff refused to take his medication, stating he would not take his medication if the officer who gassed Plaintiff opened his door.

- On June 13, 2014, Plaintiff complained of coughing up green stuff. He was examined, and no apparent distress or coughing was noted. Plaintiff was removed from the clinic area by security staff for refusing to cooperate with the assessment.

- On June 18, 2014, Plaintiff complained of chest pain at night, but his examination was normal.

- On June 19, 2014, Plaintiff's vital signs were normal. An electrocardiogram was performed and was normal. Medical staff noted that Plaintiff was in no distress, was able to ambulate from SMU to medical and back to SMU with no problems, and was laughing and joking at pill pass.

[Doc. 85-3 at 6, 8, 11, 12.] Accordingly, the record establishes that Plaintiff received prompt care as well as follow-up care, including an electrocardiogram, based on his complaints of coughing and chest pain following the administration of chemical munitions. Although Plaintiff asserts he was not seen until a week after the incident [Docs. 1-1 at 16; 127 at 2], he has put forth no evidence to support this assertion nor has he refuted the medical evidence submitted by Defendants. Thus, Plaintiff has failed to demonstrate a genuine issue of material fact remains as to whether Defendants[14] acted with deliberate indifference.[15] Accordingly, summary judgment is appropriate with respect to Plaintiff's deliberate indifference to medical needs claim.

--------

[14]To the extent Plaintiff attempts to raise a claim of deliberate indifference to medical needs against any non-medical personnel defendant, his claim must fail. To establish a claim for denial of medical care against non-medical personnel, a prisoner must show that the non-medical personnel failed to promptly provide needed medical treatment, deliberately interfered with prison doctors' treatment, or tacitly authorized or were indifferent to the prison physicians' misconduct. *Miltier*, 896 F.2d at 854. Moreover, because most prison officials are not trained medical personnel, they are entitled to rely on the opinions, judgment, and expertise of medical personnel concerning the course of treatment that the medical personnel deemed necessary and appropriate for the prisoner. *See id.* Plaintiff has made no showing that any non-medical personnel engaged in the type of conduct required by controlling case law to establish a claim of deliberate indifference to medical needs against a non-medical defendant.

[15]To the extent that Plaintiff alleges negligence or medical malpractice, negligent or incorrect medical treatment is not actionable under 42 U.S.C. § 1983. *Estelle*, 429 U.S. at 106. Similarly, medical malpractice is not actionable under 42 U.S.C. § 1983. *Id.* ("Medical malpractice does not become a constitutional violation merely because the victim is a prisoner.").

### Qualified Immunity

Defendants further argue they are entitled to qualified immunity.[16] [Docs. 10 at 4–5; 82 at 4–5; 85 at 10–11; 123 at 10–12.]  The Court agrees.

Qualified immunity protects government officials performing discretionary functions from civil damage suits as long as the conduct in question does not "violate clearly established rights of which a reasonable person would have known."  *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).  Thus, qualified immunity does not protect an official who violates a constitutional or statutory right of a plaintiff that was clearly established at the time of the alleged violation such that an objectively reasonable official in the official's position would have known of the right.  *Id.*  Further, qualified immunity is "an immunity from suit rather than a mere defense to liability."  *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985).

To determine whether qualified immunity applies, a court must determine "'whether the plaintiff has alleged the deprivation of an actual constitutional right at all[ ] and . . . whether that right was clearly established at the time of the alleged violation.'"  *Wilson v. Layne*, 526 U.S. 603, 609 (1999) (quoting *Conn v. Gabbert*, 526 U.S. 286, 290 (1999)).  "[W]hether an official protected by qualified immunity may be held personally liable for an allegedly unlawful official action generally turns on the 'objective legal reasonableness' of

---

[16]Additionally, Pate, Stirling, Mack, Frazier, Inabinet, and Worrock argue they are entitled to Eleventh Amendment Immunity in their official capacities.  [Docs. 10 at 2–4; 82 at 2–4; 85 at 9–10.]  However, by removing this case, Defendants waived Eleventh Amendment immunity.  *Lapides v. Bd. of Regents*, 535 U.S. 613 (2002); *see Kelly v. S.C. Dep't of Corrs.*, No. 0:15-2157-TMC-PJG, 2016 WL 6648068, at *4 (D.S.C. Sept. 27, 2016) (noting that by voluntarily removing the case to federal court, the defendant had waived its Eleventh Amendment immunity with respect to claims under the South Carolina Tort Claims Act), *Report and Recommendation adopted by* 2016 WL 6627873.

the action[,] assessed in light of the legal rules that were 'clearly established' at the time it was taken." *Anderson v. Creighton*, 483 U.S. 635, 639 (1987) (citing *Harlow*, 457 U.S. at 819). For purposes of this analysis, a right is "clearly established" if "[t]he contours of the right [are] sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Id.* at 640.

District court and court of appeals judges are "permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Pearson v. Callahan*, 555 U.S. 223, 236 (2009). If a court decides in the negative the first prong it considers—i.e., the court decides the plaintiff has not alleged the deprivation of an actual constitutional right or the right was not clearly established at the time of the alleged violation—the court need not consider the other prong of the qualified immunity analysis. *See id.* at 243–45; *Torchinsky v. Siwinski*, 942 F.2d 257, 260 (4th Cir. 1991) (holding the court "need not formally resolve" the constitutional question of "whether the [plaintiffs] were arrested without probable cause" to address the plaintiffs' § 1983 claim; the court stated that it "need only determine whether [the defendant]—a deputy sheriff performing within the normal course of his employment—acted with the objective reasonableness necessary to entitle him to qualified immunity").

As discussed above, Plaintiff's allegations fail to demonstrate Defendants violated Plaintiff's constitutional rights. Therefore, Defendants are entitled to qualified immunity.

**State Law Claims**

Plaintiff's state law claims could be heard by this Court only through the exercise of supplemental jurisdiction, which allows federal courts to hear and decide state law claims along with federal law claims.[17]  Federal courts are permitted to decline to exercise supplemental jurisdiction pursuant to 28 U.S.C. § 1367(c)(3), however, if "the district court has dismissed all claims over which it has original jurisdiction."  Here, the undersigned recommends that the district judge decline to exercise supplemental jurisdiction in this case and remand the state law claims to state court, where Plaintiff originally filed this action. *See Johnson v. Ozmint,* 456 F.Supp.2d 688, 698 (D.S.C. 2006) (granting summary judgment to defendants on the federal claims and remanding claims under the South Carolina Tort Claims Act to state court).

## **RECOMMENDATION**

Wherefore, based upon the foregoing, the Court recommends that Pate and Stirling's motion to dismiss [Doc. 10] be GRANTED with respect to Plaintiff's § 1983 claims; Mack's motion to dismiss [Doc. 82] be GRANTED with respect to Plaintiff's § 1983 claims; Frazier, Inabinet, and Worrock's motion for summary judgment [Doc. 85] be GRANTED with respect to Plaintiff's § 1983 claims; and Spalding's motion for summary judgment [Doc. 123] be GRANTED with respect to Plaintiff's § 1983 claims.  It is further recommended that

---

[17]A civil action for Plaintiff's state law claims could be cognizable in this Court under the diversity statute, if that statute's requirements are satisfied.  However, this Court does not have diversity jurisdiction in this case because Plaintiff and Defendants are all citizens of the State of South Carolina, which defeats the required complete diversity of parties. *See* 28 U.S.C. § 1332.

22

the action be REMANDED to the state court to address Plaintiff's state law claims brought pursuant to the South Carolina Tort Claims Act.

IT IS SO RECOMMENDED.

s/Jacquelyn D. Austin
United States Magistrate Judge

January 31, 2017
Greenville, South Carolina